[No. 2225.]

JOHN S. EPPERSON *v.* THE STATE.

1. EMBEZZLEMENT—CHARGE OF THE COURT.—If, at the time he sold the property entrusted to his care as a bailment, the bailee had conceived and had the intent to defraud his bailor of the value of the property, and appropriate the same to his own use, it is immaterial whether or not he had authority to sell the property. Harboring the intent at the time of the sale, his subsequent sale of the property and conversion to his own use of the proceeds, whether or not he had authority to make the sale, was an embezzlement of the property. See the opinion *in extenso* for a charge of the court upon the question which, harmonizing with the rule, is *held* correct.

2. SAME—FACT CASE.—See the statement of the case for evidence *held* sufficient to disclose a fraudulent intent and to support a conviction for embezzlement.

APPEAL from the District Court of Grayson. Tried below before the Hon. R. Maltbie.

The first count in the indictment in this case, upon which the appellant was tried and convicted, charged the appellant with the embezzlement of an organ, of the value of fifty-seven dollars, the property of R. A. Caylor, in Grayson county, Texas, on the twenty-first day of September, 1885. A term of two years in the penitentiary was the penalty assessed by the jury.

R. A. Caylor was the first witness for the State. He testified that he lived in Grayson county, Texas, and followed the business of farming and of selling organs. Witness gave the defendant an order on L. H. Montgomery, a merchant in Whitewright, for an organ, under a contract to sell the same for the witness. Witness and defendant agreed upon the following terms: Defendant was to sell the organ for what he pleased or could get, so as to net the witness fifty-seven dollars, twenty dollars of which was to be paid in cash and the balance in notes payable to Estey & Camp, of St. Louis, with the vendor's lien reserved. The order on Montgomery for the organ authorized the delivery to defendant of the blank notes and liens. Defendant's authority was to sell the organ for the witness and no body else, and under his instructions. The organ was turned over to the defendant in Grayson county, Texas, on the twenty-first day of September, 1885. Defendant claimed that he had sold the organ to one Miles Earnhart at Trenton, and promised to come to witness's house on the next day and turn over the twenty dollars cash payment, and thirty-seven dollars in notes. Witness next saw him in Whitewright about six weeks later, when he said that he had not obtained the notes from Earnhart, as Montgomery had no blanks to deliver him with the organ, but that the transaction was still binding, and he would make the proper returns within a few days. Witness then gave him some blank notes and a blank lien, and saw no more of him until after his arrest. Defendant never paid over to witness a cent in either money or notes. The organ was the witness's property. Defendant received it as witness's agent, and was to sell it as witness's agent, and pay witness for the same in the manner stated.

Cross examined, witness said that he received the organ from the Estey & Camp Organ Company of St. Louis, Missouri, and paid the freight. He was to pay Estey & Camp fifty-three dollars and fifty cents for the organ when he sold it; twenty dollars to be paid in cash and the balance in lien notes endorsed by witness. If not sold in ninety days witness had the option of holding it by paying interest on its said value, or of returning it by

paying freight, interest and five per cent on its value. The title to the organ was to remain in Estey & Camp until they were paid, but witness had exclusive possession and control over the organ as against any and every body when he delivered it to defendant. Witness saw that organ in Earnhart's house.

Miles Earnhart testified, for the State, that the defendant sold him an organ in September, 1884. He claimed the organ as his individual property, and, as such, sold it to witness. Witness paid him in an order on Mr. David, of Trenton, for forty dollars, and the balance in notes of five dollars per month. Witness paid all the notes, except one, in cash, and in boarding defendant's wife while he was away.

Cross examined, witness said that some time after this transaction R. A. Caylor came to his house and claimed first that he had a lien on the organ, and then that the makers had the lien. Witness refused to give it up, claiming to have bought it in good faith. Caylor then said that he was sorry he did not know that witness wanted an organ, so that he might have sold it to witness. He said, further, that defendant was to pay him fifty-seven dollars for the organ, and, according to witness's recollection, he said that he sold the organ to defendant.

H. H. David testified, for the State, that on or about September 21, 1885, he received through the defendant an order from Mr. Miles Earnhart to pay defendant forty dollars, which witness was then owing Earnhart. Witness paid the defendant twenty dollars then and a short time afterwards paid him the remaining twenty dollars.

L. H. Montgomery testified, for the State, that he delivered the defendant the organ and certain blank notes and liens, on Caylor's order, on the twenty-first day of September, 1885.

E. Brame testified, for the State, that he arrested defendant on this charge. Defendant was released on bond to appear before the examining court. He appeared once but defaulted before trial and his bond was forfeited. Witness afterwards found him in Paris, Texas. He told witness not to arrest him, as he was on the eve of starting back to stand trial, as advised to do by his wife in a letter, which letter he exhibited to witness. The State closed.

Several witnesses testified, for the defense, that they had known the defendant's reputation for honesty since his early youth. It had always been good.

W. H. Epperson, the defendant's father, testified, in his be-

half, that, shortly after the defendant's arrest, he, witness, had a conversation with R. A. Caylor, in which Caylor told him that he sold the organ to defendant, but that defendant had never paid him anything on it.

R. A. Caylor, recalled by the State, in rebuttal, denied that he ever told either W. H. Epperson or Miles Earnhart that he sold the organ to defendant.

The motion for new trial raised the questions discussed in the opinion.

*Bryant & Dillard,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. There are two counts in the indictment, the first charging embezzlement of an organ, and the second embezzlement of the proceeds of a sale of said organ. After the evidence was all in, the State elected to proceed upon the first count, and the conviction was had upon said first count, for the embezzlement of the organ. It appears from the evidence that the defendant, as agent for one Caylor, received the organ in question for sale. He was to sell said organ for fifty-seven dollars, of which amount twenty dollars was to be paid in cash, and the remainder was to be paid in notes of the purchaser, secured by a lien on the organ. Defendant sold the organ to one Earnhart, and received in payment, in money, forty-five dollars, and the balance of the purchase price was paid by Earnhart in boarding defendant's wife. He never accounted to Caylor for the amount received for the organ from Earnhart. Caylor had the possession and control of the organ at the time the defendant received it, although the legal title thereto remained in the manufacturers, Estey & Camp.

Defendant excepted to the third paragraph of the court's charge, which is as follows: "If you believe from the evidence that the defendant received from the said Caylor the organ in question, under an agreement that the defendant should act as the agent of the said Caylor in the sale of said organ, and that defendant should sell said organ, and pay over to and deliver to said Caylor a certain sum in money, or notes, that defendant should secure from the sale of said organ ; and you further believe that defendant sold said organ as his own property, and not as agent for said Caylor, and that at the time of said sale

the defendant had the fraudulent intent to appropriate the pro-ceeds of said sale to his own use, and that in pursuance of said intent the defendant afterwards appropriated the proceeds of said sale to his own use and benefit, without the consent of said Caylor, the defendant would, under such circumstances, be guilty of embezzling the organ. But, if you believe it was the intention of the defendant to act in good faith towards said Caylor, and carry out his alleged agreement, and that he, after said sale, conceived for the first time the intention to appropri-ate the proceeds of the sale, he would not be guilty of embez-zling the organ."

We do not think the exceptions to this paragraph of the charge are well grounded. As we understand the law, it clearly and distinctly states the correct rule, as announced in the de-cisions upon the subject. In Leonard v. The State, 7 Texas Court of Appeals, 417, this court uses the following language: "We are of the opinion that, notwithstanding appellant may have had authority to make a sale of the cotton alleged to have been embezzled, yet, if he sold the same with the formed inten-tion to defraud the owner, and to convert it to his own use and benefit, he is as much guilty of embezzlement of the cotton as if he had no authority to make such sale. What is embezzlement? A fraudulent appropriation of the property of another, by a per-son to whom it has been intrusted. There is no settled mode by which this appropriation must take place, and it may occur in any one of the numberless methods which may suggest itself to the particular individual. The mode of embezzlement is simply a matter of evidence, and not pleading; and the appellant, in this case, was charged in the usual form, that he "did embezzle, fraudulently misapply, and convert to his own use," the particu-lar property described. If he sold it with the honest purpose of delivering the proceeds to the owner, and, after such sale, con-ceived the fraudulent intention, he would not be guilty of embezzlement of the cotton at least. But, if the sale was simply a means to effectuate his fraudulent purpose to convert the property to his own use — in other words, to steal it — it is as much an act of conversion as if he had shipped it clandestinely to a foreign port, and there disposed of it."

The case of Baker v. The State, 6 Texas Court of Appeals, 344, cited by counsel for defendant in support of exceptions to said paragraph of the charge, is not in point, the question therein decided being different, and the statute upon which said

.decision is based having been materially changed with respect to the question involved in said decision.

We are of the opinion that said paragraph of the charge is not only correct in principle, but that it was applicable to and demanded by the evidence in the case, and that there is sufficient evidence to warrant the finding of the jury that at the time defendant sold the organ he entertained the fraudulent purpose of appropriating the proceeds of such sale to his own use. The question of his intent in making said sale—whether it was fraudulent or honest—was properly and clearly submitted to the jury.

There are some other objections made by defendant to the charge of the court, but we are of the opinion that the charge is, in all respects, sufficient and unobjectionable; and, such being the case, there was no error in refusing the special charges requested by the defendant.

There is no error in the conviction, and the judgment is affirmed.

*Affirmed.*